All rise. Closing the session. Thank you. May we proceed? 3-6-T-0-2-7-6 RV, LLC, and River Valley Recycling, LLC. Appellant by Jeffrey Asperger. This is Advantage Insurance Services Commercial Insurance Group, Inc., in Townsville. Appellee by Anthony Tunney. Good afternoon, Counsel. Mr. Tunney, Mr. Hulsward, Mr. Dolan, Mr. Phil, Mr. Snow. May it please the Court. Ten years ago, appellants hired Advantage Insurance and Tom Rule, independent insurance brokers, to procure insurance for them on two buildings in a recycling business. Appellants specifically directed Rule to obtain the same coverage limits that they had on their prior policies. In addition to that, they provided copies of the prior policies to Mr. Rule. That was actually extra because Mr. Rule, having been their insurance broker for ten years, had copies of all these prior policies. Mr. Rule failed to comply with the directions that the appellants gave to him. Instead of obtaining the same coverage that had been requested, he obtained policies of insurance that had substantially lower limits of coverage than the ones that had been in place. Your client was well aware of those lower limits, though, right? They were not. Well, they got the contract. They got the insurance agreement. They did, Your Honor. They did receive... And then they sold it off. They received the yes and no. They received the contracts sometime after they had placed the coverage. The insurance contracts did not come from Advantage Insurance Services or Mr. Rule. They came from the carrier who provided the coverage. They were mailed to them, and they were placed into the file. And my clients presumed that they had obtained, that Advantage and Mr. Rule had obtained the coverage that they had requested. But they had a written copy of the contract. They did have a written copy of the contract, but the law... It did talk about the limits. It did talk about the limits inside the contract, yes. Yes. And they paid a lower premium because of that? No, they paid about the same premium. From the past? Yes. And when the fire occurred on September 2, 2011, they found out as they examined the policies that they had substantially less coverage than they had requested and drastically less coverage than was necessary to recoup for the loss caused by the fire. They filed this lawsuit within two years of that fire. We are here because the trial court granted similar judgment where there was outstanding issues of fact remaining for the trial effect, for determination. The trial court wrongfully ruled that Appellant's claims are barred by the statute of limitations. When Appellant knew or should have known of its claims for purposes of statutes of limitations, that is a question of fact. That's longstanding Illinois law. And that question of fact is tested in light of the relationship with the broker, your longstanding relationship. It cannot be presumed in Illinois that the insured knew or should have known of the contents of the policy simply because it received a copy. That's been unchanged law for a considerable number of years. The appellees would suggest that the Insurance Placement Act of 1997 changed that, and that's what Judge Albrecht ruled below. It did not. It did not change that at all. In fact, there are a number of cases, Your Honors, which establish quite the opposite. And they are, in part, Babiars, Garrick, Dodd Technologies, DoD Technologies, and more. And those are cited in our papers. They clearly state that the fiduciary relationship between an insured and its broker, its independent broker, still exists in Illinois. That is a fiduciary relationship. When the discovery rule, which is what we're talking about here as an issue, summary judgment is appropriate only if undisputed facts allow for a single conclusion as to when plaintiffs knew or should have known of its claim. That is not the case that we have here. And also, as I stated, it cannot be presumed that the insured knew or should have known of the contents of the policy just because the policy was received in the mail. But the plaintiffs applied for these amounts. That's what they got, right? Actually, not so, Your Honor. They asked for the same coverage that they had in the prior policies. They received substantially less coverage than they had in prior policies. Prior policies provided $1.545 million in coverage for each building, combined limits of over $3 million, plus $1 million for business personal property. They received $1.545 for one building, $545,000 for another building, which were not combined limits. And by the way, combined limits can be confusing to insurance. And $75,000 for business personal property, less than the $1 million that they had requested, specifically directed their broker to obtain. And this is, I think I understand what Your Honor's questions are. This is the issue of whether a fiduciary relationship exists and whether a principal may rely upon its agent to carry out its requests. That's what we have here. That's fair and simple. And that's what the courts have addressed and what Illinois has stated is still the law. The trial court ignored the evidence and improperly presumed that the appellants knew or should have known of the insufficient limits at the time the policies were received. And again, Illinois law clearly states that the insurer's duty to know the contents of a policy is tested in light of the fiduciary relationship between the insured and the broker. Any questions about that point in Illinois law? Now, we acknowledge that there may be a question of contributory negligence involved as to whether they had a right to rely upon their broker, but the basic black-letter law is that the insureds may rely upon the fiduciary relationship and expect that their independent broker will carry out their instructions. The trial court's presumption that RVP and RVR should have known of the limits was erroneous and it contravenes long-established Illinois cases. It's contrary to the arguments that appellees make and this law is still the same law in Illinois and it's the law of black, Perlman, economy, fire and was most recently affirmed by Babiars. Babiars, December 2016. The statement of law is that where an insured retains independent insurance broker, a fiduciary relationship exists between the parties and the insured is entitled to rely on its broker and the policies it procures. Knowledge cannot be imputed simply because the insured receives copies of the policy. The side position of summary judgment was improper here. The trial court did not have any basis of authority given the jury demand to make findings of fact that as to the nature of the relationship between the parties or as to when the appellants knew or should have known of appellees' negligence. Both of these are questions of fact to the prior fact. The trial court's erroneous award of summary judgment should therefore be reversed. The appellees state that it should have been obvious from the policies what the coverages were, but the law states that it's not necessary for the principal, the insured, to have read the policies if it has a fiduciary relationship with the independent broker. Here, it just happened that RVP and RVR, when the policies were received, they got filed away. They did not take the time to read them. Many people do not read their insurance policies. That's why the law requires Black and Perlman state that it's first a question of fact as to whether the insured can be presumed to have read the policy. The answer in Illinois is no. There cannot be a presumption. Next, the prior fact is required to look at the relationship of the parties. Now, in this case, the policy was renewed. Renewed, right? It was renewed twice. Yes. Does that have any meaning in that mix? Only, Your Honor, insofar as it might have to do with contributory negligence, which would come up with the prior fact, not at summary judgment level. Our simple statement here is that this case should not have been disposed at summary judgment level because these questions of fact remain for the prior fact. And if it was reasonable that they should have understood this or known about this, that would be a determination that would be made by the prior fact. How does the contributory negligence argument fit with the discovery rule? The discovery rule is sort of separate and distinct insofar as it's based upon the fiduciary relationship between the parties. I want to make it clear to the Court that we're not claiming here that there is a breach of fiduciary duty. It's not part of our claim. Our claim is negligence and breach of contract against the broker who we contend and have alleged is our agent and who we contend was obligated to carry out our instructions and did not. And all the cases cover this. Virtually all the cases cover this. Did I answer Your Honor's question? Your position on it, yes. I'm sorry? You've answered your position on the matter, yes. Thank you. So there are essentially, with respect to the obviousness question, there are two approaches. Black and Pearlman say, first the question of fact is whether the insured can be presumed to have read the policy. Question of fact cannot be determined as a matter of law. Second, even if the insured can be presumed to have read the policy, there's a question of fact as to whether the policy was clear and unambiguous such that the insured would have understood it. That's the second approach. These are amounts, policy amounts, which cover? How much money? Yes, Your Honor. Policy amounts, limits, yes. And the limits that were requested by RVP and RVR were the limits that they had in their prior policy, not the limits that were acquired by Mr. Rule and Advantage, which were substantially less. And they never told RVP and RVR that the limits that they had obtained from a different company were substantially less than the ones that they had in their prior policies, which had also been obtained by Mr. Rule. This lawsuit was filed beyond the two years of the last renewal, correct? Yes, because it is our position that the discovery rule applies because RVP and RVR did not discover that they had been injured until the fire occurred, and they found that the coverage was substantially less than what they had requested. Thank you. Contrary to the arguments, the Statute and Insurance Placement Act do not overturn or eliminate the fiduciary relationship in Illinois. And again, it's important that we understand this is a fiduciary relationship which exists, which requires that the fiduciary, Rule and Advantage, carry out the instructions explicitly, the instructions provided to them by RVP and RVR. The only change that the Act made with respect to independent brokers is that it limited a broker's liability for breach of fiduciary duty, not fiduciary. It didn't eliminate the fiduciary relationship. That relationship still exists in Illinois. It changed the nature of the fiduciary duty and limited it to situations involving civil liability under standards governing the conduct of a fiduciary or a fiduciary in a relationship. It involves really the misappropriation of money. But the Act specifically says that it still applies the standard of ordinary care in the analysis of whether the broker, whether it's an independent broker, as we have here, or a captive agent still may have a duty to the insured of ordinary care. Counsel's time. Thank you. Thank you, Your Honor. Counsel. Please report, Counsel. Your Honor, first I'd like to address a question that you raised. The limits of insurance that were provided by ERI for the two buildings and for the business operations were the limits of insurance that were applied for. The applications contained those limits. The applications are part of the record. The applications were signed by Mr. Phil, who is a CFO and a member of the liability corporations and the person responsible for procurement insurance for all of the related entities. Didn't he say in his deposition that all he got was the last page, the signature page? All he got was the last page. He never asked for anything more and signed it as he said was his custom, as was his custom to receive insurance policies and put them in a folder and not look at them. That was his testimony as to his custom. Now, we are here on statute of limitations and the discovery rule. I don't think that you can start anywhere discussing the statute of limitations and discovery rule without looking at the case of Knox v. Celotex. It's the Supreme Court decision that every case that's cited in these briefs references back to Knox. And it says, at some point, the injured party becomes possessed of sufficient information regarding the injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under discovery rule, the running of the statute of limitations period commences. So when you're possessed of sufficient knowledge and information to know that something's wrong and to know who caused it, then you have the statute of limitations is triggered and a reasonable person is put on inquiry and has to do something about that. And counsel says that there's no case that says that an insured has a duty to read its policy. I beg to differ. What about the Babiars? The two primary cases cited are Perlman and Babiars. In Perlman, the issue was decided on a 2-619 motion. And the insurer presented an affidavit saying, I looked at the policy. The question there is whether there was an inflation guard in a fixed index or in a annuity plan that was being sold. The plaintiff finds an affidavit in opposition to the 2-619 motion stating that. I looked at policy and I saw a reference to the consumer price index and I assumed that that related to inflation protection. That, in a 2-619 situation, creates question of fact. Was it reasonable for that person to rely on that phrase to do that? That's a question of fact, that 2-619. In this case, I filed a 2-619 motion at the outset, which was denied because we didn't know when Mr. Phil received the policies and if, in fact, he received the policies at the appropriate time. So we did all the discovery and we learned the facts. And as we set out, I think, in a table in our brief, the dates the policies were issued, received, the latest date they could possibly have been received, and the date the suit was filed, which shows that it's more than two years after the receipt of the last policy. Now, the other thing important about Perlman, it says in Perlman, we have not excused plaintiffs from their burden of knowing the contents of the policy when there are no allegations that the language of the policy was ambiguous. A genuine issue of material fact existed as to when plaintiffs knew or should have known that the policy was defective. That's in Perlman and that's in the 2-619 context. Because of that affidavit, there's a question of fact. Different than our situation, which has been fully discovered. In our situation, we have the following undisputed facts. As counsel pointed out, travelers had $1.5 million on each building of the two buildings that were insured. That was later changed to a $3 million blanket. They had $1 million in business, personal property, and inventory coverage. And the policies procured, applied for and procured, contained $1,545,000 on one building, $545,000 on a second building, and $75,000 on business, personal property. Those limits were shown on the first page of the insurance policy, of each policy that was delivered to the insurer. Now, Mr. Phil never looked at or checked the policies to see if they contained proper limits. That is undisputed. That does not forgive the obligation to know the contents of your policy. VAMIARS is the second policy. But isn't that, I mean, in Perlman, the difference is because he admitted he read it. I thought that's what, I looked at it and I saw that that was enough. I mean, isn't that the distinction where he said, no, now that you've looked at it, you should know what it says, unless it is so complex that an average person wouldn't understand it. But here, in order to trigger the discovery rule, they said, no, we didn't do that. We did not read these. So we have not, you know, so then the duty to know what's in the policy isn't true. Isn't that, I mean? I disagree respectfully. I think that the case law is clear that an insurer has an obligation. No, I'm not saying that. I'm saying that there's a question of fact of whether or not they knew what was in it, when they knew it. In Perlman? And here, is it timing? I mean, all right, so you have to look at whether the discovery rule, should they have known, you have to look at that based on the relationship they have with the broker. So aren't all of those questions a fact? That's all I'm getting to. In my view, no. And I'll tell you why. So is it the day you get it in the mail? Is it the day, you know? It is if I receive the policy. That is the decision in Hoover, which started this chain of case decisions. Hoover said that when the Hoovers received their policy, they had the information necessary to know if they had adequate limits to meet the 80% coinsurance clause as well. And they did not take any action after receiving the policy, until such time as the insurance company said, oh, by the way, this is your last payment because we've reached the policy limit and we're not obligated to pay anything more than the policy limit. It's the same thing that happened here. After the fire, ERIE informed RUP that they're going to stop making payments because they've reached the limit of the policy. Now, VAMLAS, which is cited for the proposition that they don't have to read the policy, contains the following language. It is well settled that claimants bear the burden of knowing the contents of their insurance policies. Even if they do not read it, they are deemed to know the information the policy contains. Insurers have an affirmative duty to review the terms of a new policy issued to them. This was a new policy when first issued by ERIE, replacing a traveler's policy and replacing a universal underwriter's policy. We do not excuse the burden of knowing the contents of an insurance policy where there are no allegations that it was ambiguous. And for that proposition, we cite Perlman, which is the other case cited by Clinton for the proposition that they don't have to read their policy. VAMLAS goes on. Moreover, even if a fiduciary relationship existed, the trial court did not decide the commencement of the limitation spree as a matter of law, but rather the court made a factual determination, and this is in Babiarch's, that Babiarch should have known of the alleged misrepresentations in April of 2009 when they received the policy. In Babiarch, the insurer received the documents relative to the insurance product that they purchased that wasn't technically a policy. Even if a fiduciary relationship existed, what the trial court did in our case, what Judge Albrecht did, was made a factual determination that our VP should have known of the alleged misrepresentation at the time it received the policies. And in our chart, we put in the last possible date, because Mr. Fields said, I don't exactly know when I received it, but I know I received it before the next renewal. So we put those dates in the chart. Now, the Babiarch's court says, if Babiarch had read the documents, even if she stopped reading after the first two pages of the contract, she would have been aware of each alleged misrepresentation. If Mr. Fields had looked at the documents on each policy, the first page of each policy's index sheet that states what the limits are, he would have known what he had long before the fire and would have been able to take action to correct it or could have filed suit to change the policy limits, sue the agent for failure to follow his instructions, but they didn't do that. Now, the other question I want to address quickly, because I don't want to have a lot of time. I already mentioned Uber. Uber says that Planned First learned of defendant's negligence. Excuse me. Definitely first. Planned First learned of their staff making payments. We find that once the Hoovers received their policy in May of 2007, they were in the best position to determine if the policy's limit for their house was sufficient to meet the 80% replacement cost requirement. By reviewing the policy before the fire, they had an opportunity to read their insurance policy to determine whether the policy limits were adequate. Once they had their policy, they had all the information needed to determine the limits of their coverage. That's the finding of the trial court in this case. They had all the information necessary to determine what their limits were and to take action. And that triggers the statute of limitations under the discovery rule. Now, we also heard about Garrick, and that Garrick was offered to the court as the case that says that there's no obligation to read a policy based on fiduciary relationship. Garrick had to do with missing or lost hearings. A 2005 policy, there was a claim for lost hearings. And so the 2005 insurance producer deleted the coverage for those hearings because they were lost. And the insurer apparently replaced those hearings at some point in time, got a new policy in 2009, but those hearings were never scheduled. And they tried to go back and sue the 2005 producer. And the Garrick court held that plaintiff had an obligation upon receipt of the 2009 policy to read the schedule of covered items. If something was not on the schedule, it was plaintiff's responsibility to advise the producer. The 2009 policy set forth the scope of plaintiff's insurance policy coverage procured by the 2009 brokers. And plaintiff should have been aware as to the extent of that coverage. Illinois law places a burden on the insurer to know its needs for coverage and the content of its insurance policies. And lastly, I'd like to touch on the Insurance Placement Liability Act, which went into force in January 1, 1997. And again, contrary to counsel's argument, made substantial changes to the rights and obligations. It found, as the statute says, an insurance producer has the obligation to exercise ordinary care when procuring insurance pursuant to the request of an insurer or a proposed insurer. So they didn't use the word agent. They didn't use the word broker. They used the word insurance producer. In scrupulous, our Supreme Court, in reconciling what's meant by the Insurance Placement Liability Act, says that an insurance agent from Black's Law Dictionary is a person authorized by an insurance company to sell its insurance policies. An insurance broker is a person who, for compensation, brings about or negotiates contracts of insurance as an agent for someone else, but not as an officer, salaried employee, or licensed agent of an insurance company. Now, that dovetails back into barriers. Because in bad guys, the first question was whether the product that was sold by Mr. Stearns, I believe it was, was a security or an insurance product. And the first instance, the court determined it was an insurance product. And Mr. Stearns was a registered securities broker and also a licensed insurance agent. And the court determined that in selling insurance products to Stearns, he was an insurance producer pursuant to the statute. And the relationship between he and the insurer was established in an agreement clearly stating that he was an insurance agent for Ellions and delineating his responsibilities. In the opinion, it says he had similar contracts with 20, approximately 20 insurance companies. Now, in our case, Tom Rule, who's an employee with Eddage Insurance, licensed insurance producer, testified that he was able to sell Erie Insurance Company products to the plaintiff because of an insurance agency agreement enforced between Advantage and Erie and that the insurance agency agreement defined what they were supposed to do and what the manuals and guidelines were. And all the manuals and guidelines were accessible online through something called the agent's portal. Now, once the Vallejo court determined that when selling the Ellions insurance products, Mr. Stearns was an insurance producer, they made those following statements that I read as to the duty of an insurer in dealing with their insurance producer. So contrary to the plaintiff's argument, Bambiars states that if you're an insurance producer selling insurance products, then the statute applies and you have a duty of ordinary care. But as it relates to the statute of limitations, as I read, insurers have an affirmative duty to review the terms of a new policy issued to them when you do not excuse the burden of knowing the contents of a policy. And lastly, the insurance liability placement substantially changed the laws with regard to fiduciary duty owed by licensed insurance agents, brokers, producers. Call them what you will. Whether they have this relationship or that relationship, they can only be sued under a fiduciary obligation for misappropriation of money, of the insurer's money, whether it's premium dollars or should have been plain dollars or other dollars. That is the only cross and there was no fiduciary duty in this case. I thank you for your time and attention. What counsel said is absolutely incorrect. The law in Illinois always has been that there is a substantial difference and Illinois has recognized this between a captive insurance agent, that is an agent who works for the insurance company, who is the agent of the company, and an independent insurance broker, such as Mr. Rule and Advantage, who work as they have acknowledged and admitted in their pleadings and their discovery on behalf of their clients, excuse me, RVP and RVR. Illinois has always recognized that difference. It still recognizes that difference. Skipperis, however it's pronounced, does not change that at all. The Illinois Supreme Court said that. Specifically, it does not take that relationship away. Several mistakes the counsel said here, misrepresentations of the law. First of all, this was not a mistake. Judge Albrecht did make factual determinations on issues which were questions of fact for the prior fact. Judge Albrecht is not the prior fact. This is a jury case. Counsel read to you an excerpt from Babiar's decision. He read part that talks about, first of all, Babiar's was a bench trial and the agent in that case was clearly an agent of the insurance carrier. He represented that at all times, never said anything different, never represented himself, as in this case, as being an independent broker. Never. He signed documents which the insured had and insured co-signed with him in which he represented he was the agent of the insurance carrier. He was not an independent broker. Substantial difference. That's the distinction in Illinois. That's the distinction that we're here about. Babiar's. This is what the court said, what counsel did not read to you. He read a portion of it to you, did not read this part. Babiar's maintains that where a fiduciary relationship exists, failure to read the insurance documents does not preclude a claim as a matter of law. We agree. An insured student may know the contents of his policy is tested in the light of the relationship between the insured and his agent. Here is to rule and advantage. Where a fiduciary relationship exists, failure to read an insurance policy does not prevent a claim as a matter of law, citing with authority, Perlman and Black, the cases that we've relied upon. That is the law of Illinois. It has not changed, and it was substantiated in 2016 by the Babiar's decision. If there's any question about it before this decision, this decision wraps up that issue and takes care of that question. Something else that counsel did not read to you. He read a section out of Perlman, out of context. Although the court has recognized the language in which you did not read your insurance policy as a common practice, we have not excused Perlman from the burden of knowing the contents of the policy. This is the part that he read to you. What he didn't read to you is the very next paragraph. On the other hand, we have also recognized that there is a distinction between an action by an insurer against his insurer who issues the policy and an action by an insurer against his agent who procures the policy. That's the part he didn't read to you. That's the law of Illinois. How do you harmonize the two paragraphs that you read? The court says that there's a duty to read the policy, except when there's a relationship, a fiduciary relationship, such as exists in this case, where the insured has a right to rely upon his independent insurance broker, your Mr. Rule, in advantage. That's the distinction, Your Honor, between a captive agent and an independent insurance broker. Here we have an independent insurance broker. Where there's an independent insurance broker involved, the law clearly says, did say, and continues to say as a badiarist, that the insurance broker or agent owes a separate duty to the insurer, and the insurer does not have a burden of reading the policy. Counselors, one minute. How does the statute of limitations play in all this when there's a difference between the discovery rule and contributory negligence? That's a bad question. What about the situation of stating these policies and the renewals? It's a question of discovery, and the point here is, and what Illinois law says and I just read, is that there's a distinction between a captive agent and an independent broker. The insured has a right to rely upon the independent broker to carry out the insured's instructions. Here, Mr. Phil, RVR, RVP, instructed Mr. Rule to obtain the same coverage that they had before. He did not. He did not notify them. He obtained different coverage. He did not obtain the coverage that they requested. He had the obligation to do that under Illinois law, clear black letter Illinois law, which has never been changed, not by the Act, not by anything. That was not done here. That's a question of fact, and if you recall, Your Honor, when I began my argument, the point that I said here, the point that I raised was that this is a situation that's fraught with questions of fact, which were not possible or capable of being determined in a 2-6-19 motion. These are questions of fact for the jury in this case. It was a summary judgment motion. It was a summary judgment motion, yes. But these are questions of fact that still remain in this case, and they can't be determined as long as there's more than one interpretation that can be had, and there are. So your position is that in Illinois, the law is that if you have an agent separate from the insurance company itself, you as the client have no responsibility to do anything. You just say, this is what I told them to do, and now I'm claiming that they don't do it. What the law says. That is a fact question all the time. It is a fact question. Yes, that's what the law says. What the law says is that if you have an independent broker, then the broker is a fiduciary, and the broker then must carry out your instructions. There are questions of contributory negligence. Should they have read the policy, perhaps? Were there other situations or issues that were involved, perhaps? None of those have come up here because we haven't gotten that far, because the court below cut us off by entering summary judgment when there were issues of fact that were remaining in the case. That's why we're here. The summary judgment was based on the statute of limitations. Yes, and the statute of limitations was based upon the discovery rule, and Judge Albrecht ruled that when they received the policy, they had all the information they needed.  We have recognized that there is a distinction between an action by the insured against his insurer, who issues the policy, and an action by an insured against his agent, who procures the policy. May I finish one more thing? Thank you, Your Honor. The FBI maintains that when a fiduciary relationship exists, failure to read the insurance documents does not preclude a claim as a matter of law. We agree. That's the Pearlman holding. That's the law of Illinois. That's the law that we ask the court to apply here. Thank you very much for your time. Thank you, counsel. The court will take this matter under advisement and make a decision in a short time period. Thank you for your patience with the court, and now the court is adjourned until tomorrow.